*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re N. A. WILLIAMS, Minor.

UNPUBLISHED
June 25, 2019

Nos. 344804 and 344805
Wayne Circuit Court
Family Division
LC No. 16-522121-NA

Before: CAMERON, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father appeal by right the trial court's order terminating their parental rights to their child, NAW, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if child returned to parent's home). Finding no clear error, we affirm.

Child Protective Services (CPS) originally received a neglect complaint about NAW after he was hospitalized for over a month due to "failure to thrive." He was also being treated for a bone infection. Further, respondent-mother had missed at least seven medical appointments regarding NAW's cleft lip and palate. CPS was concerned about NAW's health and well-being. Respondent-father was homeless at the time, and he was not involved in NAW's medical care. The trial court removed NAW from respondent-mother's care.

As the case progressed, both respondents entered into parent-agency treatment plans (PATPs) which required them to complete psychological evaluations and comply with all recommendations, including any recommended psychiatric evaluations. Also, the trial court ordered each respondent to participate in and benefit from individual therapy, maintain suitable housing and a legal source of income, keep regular contact with the caseworker and attend all court hearings, and to attend all of NAW's medical appointments. Further, respondents were to participate in and benefit from infant mental health services, which encompassed instruction on parenting skills. Both respondents eventually enrolled in an additional parenting skills class. A parenting coach was assigned to respondents, and they were instructed to engage in mental health services.

-1-

The case proceeded for well over a year. Both respondents consistently missed NAW's medical appointments. They also had recurring issues with their parenting skills and abilities. Neither was able to obtain suitable, appropriate housing, and they did not participate in mental health services.

On appeal, respondent-father first argues that petitioner did not make reasonable efforts to reunify him with NAW. We disagree.

To preserve an issue regarding reasonable efforts at reunification, a respondent must object or indicate that the services provided to him or her were inadequate in some fashion. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). And an objection to the inadequacy of services must be made when the trial court adopts a case service plan or soon afterward, not at a dispositional hearing to terminate parental rights. *Id.*; *In re Terry*, 240 Mich App 14, 26-27; 610 NW2d 563 (2000). In the instant case, respondent-father did not object to the reasonableness of the efforts at reunification until this appeal. Accordingly, the issue was not preserved by respondent-father. Our "review is therefore limited to plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9.

Absent aggravating circumstances, "[b]efore a court may enter an order terminating parental rights, Michigan's Probate Code, MCL 710.21 *et seq.*, requires a finding that the Department . . . has made reasonable efforts at family reunification." *In re Hicks/Brown*, 500 Mich 79, 83; 893 NW2d 637 (2017). There were no aggravating circumstances with respect to respondents, so reasonable efforts at reunification were mandated. "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. At each review hearing, the court is required to consider compliance with the case service plan regarding services provided and whether the parent has benefited from those services. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). A respondent must establish that he or she would have fared better if other services had been offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).

Respondent-father was provided with a plethora of services, including infant mental health services, an additional parenting skills class, parenting visits, mental health services, and a parenting partner. He was given the opportunity to have an additional day with NAW each week, but he declined that offer. Respondent-father was also given the opportunity to attend all of NAW's medical appointments so that he could better understand the medical issues and treatment. Yet, he failed to attend many appointments, which we find particularly troublesome considering the NAW's serious health challenges. When respondent-father did attend medical appointments, he did not ask questions or take notes as he was encouraged to do. Respondent-father was provided information for mental health services, but he did not meaningfully participate in them. Despite petitioner's efforts, respondent-father failed both to engage in some

services and to sufficiently benefit from those services in which he did participate. Therefore, we hold that respondent-father has not demonstrated plain error affecting his substantial rights.

Next, both respondents argue that the trial court clearly erred in finding that the statutory grounds for termination were proven by clear and convincing evidence and that the court also clearly erred by finding that termination of parental rights was in NAW's best interests. We disagree.

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide for termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

---

[1] This was the language of MCL 712A.19b(3)(g) when respondents' parental rights were terminated. Subsection 19b(3)(g) was amended pursuant to 2018 PA 58, effective June 12, 2018, and now provides for termination when "[t]he parent, although, in the court's discretion,

-3-

* * *

     (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Moreover, "harm," for purposes of MCL 712A.19b(3)(j), includes emotional as well as physical harm. See *In re Hudson*, 294 Mich App at 268. "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711.

When NAW was removed from care, his medical needs were not being met. During the pendency of the case, respondents failed to attend many of his medical appointments as they were ordered to do. Moreover, they did not have or obtain a firm understanding of NAW's medical diagnoses, needs, treatments, and future challenges. Also, although both parents had their own housing, the homes were not appropriate for NAW. There were issues with cleanliness and access to hazards. Additionally, respondents failed to fully participate in and benefit from their PATPs, and neither respondent had parenting skills sufficient to provide proper care and custody. Respondents needed prompting to change NAW's diapers and then failed to do so correctly. This difficulty with such a basic task clearly evidenced respondents' lack of capacity to properly and adequately address the more complex issues regarding NAW's medical needs. We also note that it was not uncommon for respondent-father to fall asleep during parenting visits. Furthermore, both respondents were directed to engage in mental health treatment. Yet respondent-mother never participated in the treatment, and respondent-father, while completing an initial intake assessment, never returned for treatment. Respondent-mother did not become employed until the case was coming to a close, and she partially relied on respondent-father for financial support. And although respondent-father was employed, he had difficulty budgeting his money and properly allocating funds.

Because respondents did not fully grasp NAW's medical needs, issues, and treatment, and because they did not fully participate in and benefit from their PATPs, we are not left with a firm and definite conviction that the trial court made a mistake in finding that the statutory grounds for termination were proven by clear and convincing evidence. Stated otherwise, we hold that the trial court did not clearly err in its ruling concerning the statutory grounds for termination.

---

financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

-4-

With respect to a child's best interests, we place our focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. In assessing a child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. A trial court can additionally consider the length of time a child "was in foster care or placed with relatives," and whether it was likely that "the child could be returned to [the parent's] home within the foreseeable future, if at all." *In re Frey*, 297 Mich App at 248-249. Further, the trial court may consider the testimony and opinion of experts. See *In re Conley*, 216 Mich App 41, 44; 549 NW2d 353 (1996).

Here, there were three days of testimony concerning the best interests of the child. The trial court considered respondents' lack of participation in and benefit from their case service plans. The trial court also took into consideration the fact that NAW had been in foster care for most of his life. The court noted that the foster-care home was pre-adoptive and that NAW's needs, medical and otherwise, were being met in the home. The trial court found that NAW's bond with the foster parents was stronger than any bond he had with respondents. The court indicated that the foster family was able to provide the permanence that respondents were unable or unwilling to supply. Additionally, the foster-care caseworker opined that termination was in NAW's best interests. We conclude that the trial court properly considered the various best-interest factors and did not clearly err in finding by a preponderance of the evidence that termination of respondents' parental rights was in NAW's best interests.

We affirm.

/s/ Thomas C. Cameron
/s/ Jane E. Markey
/s/ Stephen L. Borrello